LIFE OF AMERICA INSURANCE COM-
PANY, Insurance Investment Company
and John W. Woodward, Plaintiffs-Ap-
pellants,

v.

AETNA LIFE INSURANCE COMPANY,
Defendant-Appellee.

No. 84–2236
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1984.

Hutcheson & Grundy, James M. Lober, Houston, Tex., for plaintiffs-appellants.

Susman & McGowan, James Thomas McCartt, H. Lee Godfrey, Houston, Tex., for defendant-appellee.

Before CLARK, Chief Judge, REAVLEY, and GARWOOD, Circuit Judges.

PER CURIAM:

Life of America Insurance Company (Life of America) appeals an order compelling arbitration of its dispute with Aetna Life Insurance Company (Aetna) and an order staying all proceedings pending arbitration. The issue on appeal is whether the McCarran-Ferguson Act precludes arbitration in this case because provisions of Texas insurance law and general law which provide for the award of punitive damages would be impaired. We find the McCarran-Ferguson Act does not preclude arbitration of this dispute between Life of America and Aetna and any issues as to awards of damages are premature. The district court's order and stay are affirmed.

I.

In April 1970, Life of America entered into a Reinsurance Agreement with Aetna under which Life of America agreed to reinsure 37% of the coverage under a group life insurance plan with El Paso Natural Gas Company (El Paso). During the term of the Reinsurance Agreement, Aetna would refund to El Paso a portion of the premiums paid if at the end of each year the actual loss experience was less than the estimated loss experience upon which the premiums were calculated. Life of America would contribute its pro-rata share of these refunds.

In 1983 a dispute arose over Life of America's obligation to participate in the refunds. Life of America contends Aetna is seeking contributions for a year which commenced after the Reinsurance Agreement terminated. Aetna sought to submit the dispute to arbitration as provided in the Reinsurance Agreement.[1] Life of America filed this suit seeking a declaratory judgment that it was not obligated to make further payments under the Reinsurance Agreement, an injunction against arbitration of the suit, treble damages for violation of article 21.21 § 4(8) of the Texas Insurance Code,[2] and treble damages for violation of § 17.46(12) of the Texas Decep-

1. Section 10. *Arbitration*

This Agreement shall be regarded by the parties hereto as an honorable engagement rather than as a mere legal obligation and, in the event any dispute arises by the parties hereto as to the rights or liabilities incident to this Agreement, the same shall be settled by arbitration by three arbitrators in accordance with the rules of the American Arbitration association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. One of such arbitrators shall be selected by the Insurer, one by the Reinsurer, and the third shall be selected by the two so selected. All arbitrators shall be chosen from the officers of companies writing group insurance other than the Insurer and the Reinsurer or any other reinsurer under each Policy. Arbitration shall take place in Hartford, Connecticut unless otherwise agreed by the arbitrators. The award shall include the fixing of a reasonable expense of the arbitration to be borne equally by the parties and shall be final and binding upon the parties.

2. Article 21.21, § 4(8) of the Texas Insurance Code provides:

The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

\* \* \* \* \* \*

(8) Rebates.

(a) Except as otherwise expressly provided by law, knowingly permitting or offering to make or making any contract of life insurance, life annuity or accident and health insurance, or agreement as to such contract other than as plainly expressed in the contract issued thereon, or paying or allowing, or giving or offering to pay, allow, or give, directly or indirectly, as inducement to such insurance or annuity, any rebate of premiums payable on the contract, or any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or in-

tive Trade Practices-Consumer Protection Act [3] (DTPA). In response, Aetna asserted its right under sections 3 and 4 of the United States Arbitration Act to seek an order compelling arbitration and a stay of all proceedings pending arbitration.[4] The district court granted Aetna's motions. Life of America now claims that arbitration of this dispute would impair, invalidate or supersede state insurance laws and therefore conflict with the McCarran-Ferguson Act.[5]

## II.

Life of America claims its dispute with Aetna is not arbitrable because public policy prohibits an arbitrator from awarding treble damages. Thus, by sending this dispute to arbitration, Life of America will be denied treble damages, a remedy it is entitled to under Texas DTPA and insurance laws. Life of America argues that deprivation of these state-delineated remedies con-

ducement whatever not specified in the contract....
Tex.Ins.Code Ann. art. 21.21, § 4(8) (Vernon 1981).
Section 16(b)(1) provides that parties injured by deceptive acts or practices proscribed by article 21.21, § 4 may recover three times the amount of actual damages plus costs and attorneys' fees. *Id.* at § 16(b)(1).

3. The Texas DTPA makes it a deceptive trade practice to represent "that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Tex.Bus. & Com.Code Ann. § 17.46(12) (Vernon Supp.1984). Life of America contends that Aetna engaged in such acts by offering rebates, which are prohibited by Texas insurance law. *See supra* note 2.

4. The pertinent parts of sections 3 and 4 of the Arbitration Act are as follows:
§ 3. If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

travenes the McCarran Act which prohibits federal law from impairing, invalidating or superseding state law promulgated to regulate the business of insurance.

Life of America does not urge that its arbitration agreement impinges on any right other than its right to treble damages under Texas law. In analyzing this question, we look separately at each of Life of America's treble damage claims.

We look first at the claim for treble damages under the Texas DTPA. In *Commerce Park at DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334 (5th Cir. 1984), this court dealt specifically with the question of whether treble damages were awardable in arbitration of claims under the Texas DTPA. The court determined that the propriety of an award of treble damages by an arbitrator was best left to an action to enforce an award, should one be granted. *Id.* at 339 n. 6. In addition,

9 U.S.C. § 3.
§ 4. A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement....
9 U.S.C. § 4.

5. The pertinent parts of the McCarran-Ferguson Act provide as follows:
§ 1011. Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.
15 U.S.C. § 1011.
§ 1012. (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance....

we note that the DTPA is a general statute. Whether Texas intended it to apply when a statute specifically designed to regulate the business of insurance also provided for treble damages is unclear. We further note that the agreement to arbitrate this claim, in and of itself, does not implicate the McCarran Act.

■ Life of America's claim for treble damages under Texas insurance laws is a bit more complicated. These laws were promulgated to regulate the business of insurance. However, Life of America's sole protest against the arbitration it contracted for is that it could be denied treble damages. This argument prematurely assumes both that an arbitrator will award it actual damages and that such an arbitrator would be prohibited from granting treble damages. Although we are aware of Texas authority prohibiting arbitrators from awarding punitive damages, see *International Union of Operating Engineers, Local No. 450 v. Mid-Valley, Inc.*, 347 F.Supp. 1104, 1109 (S.D.Tex.1972), whether an arbitrator appointed under this agreement may award treble damages when such an award is specifically authorized by Texas statute is unanswered. Were we to deny arbitration on the assumption that an arbitrator was unable to award treble damages, we would be deciding prematurely the propriety of Texas treble damages and their availability in this arbitration. We refuse at this juncture to predict whether actual damages should be awarded in this case. Furthermore, we expressly pretermit any ruling on the propriety of awarding treble damages in this arbitration. Rather, we follow the approach taken by

this court in *Commerce Park* that such a determination is best left to an action to enforce the award, should one be made. 729 F.2d at 339 n. 6.

Until arbitration establishes that Life of America is entitled to damages but must be denied treble damages, its asserted rights under Texas law have not been impaired. The arbitrator may fashion a remedy that fully satisfies Life of America or it may find Life of America is entitled to no actual damages,[6] in which case there would be nothing to treble.

■ We expressly refrain from deciding that Texas law applies to this dispute. In a choice-of-law clause, the parties agreed that Connecticut law would govern the Reinsurance Agreement.[7] They also selected Hartford, Connecticut as the forum where arbitration would take place.[8] Life of America has not alleged that the arbitration or choice-of-law agreements were induced by fraud or overreaching so as to negate their validity and effect. The briefs do not elucidate any special interest of the State of Texas which would justify supplanting the chosen law of Connecticut for that of Texas. Whether this dispute between two insurance companies involves insureds who are Texas residents is an open issue. In short, whether there is reason to ignore the choice-of-law clause agreed to by the parties is a matter to be decided by the arbitrator.

■ Our decision is influenced heavily by the strong national policy favoring arbitration. See *Southland Corporation v. Keating*, —— U.S. ——, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).[9] This court has adhered

15 U.S.C. § 1012.

6. According to Life of America's brief, it complains it should not be forced to make contributions to Aetna under the Reinsurance Agreement because such contributions would be unlawful. Life of America has not yet made the payments it complains of. Were the arbitrator to agree with Life of America, the insurance company would be relieved of the obligation claimed by Aetna, avoiding contribution and actual damages. Its brief does not contend that Life of America is entitled to reimbursement for any past payments.

7. Section 11. *Applicable Law*

This Agreement shall be governed by the Laws of the State of Connecticut.

8. *See supra* note 1.

9. In *Southland*, the United States Supreme Court stated that in enacting the Arbitration Act, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." 104 S.Ct. at 853.

consistently to that policy, noting that arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue...." *Commerce Park,* 729 F.2d at 338; *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 168 (5th Cir.1979). Similarly, the settlement of disputes by arbitration is favored in the law of Texas. *Carpenter v. North River Insurance Co.,* 436 S.W.2d 549, 553; (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).

 When a written arbitration agreement exists, the arbitrability of a dispute is a question to be decided by the courts on the basis of the contract entered into by the parties. 9 U.S.C. §§ 3 & 4; *Commerce Park,* 729 F.2d at 338. Absent allegations of fraud in the inducement of the arbitration clause itself, arbitration must proceed when an arbitration clause on its face appears broad enough to encompass the parties' claims. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 406, 87 S.Ct. 1801, 1807, 18 L.Ed.2d 1270 (1967); *Commerce Park,* 729 F.2d at 338–39. On its face, the language of the arbitration clause in the contract between Life of America and Aetna is broad enough to cover the claims here at issue.

At this juncture, we see no certain impairment of Texas insurance law which would trigger the McCarran Act or thwart arbitration. Therefore, we are swayed by the ponderous mandate which declares that doubts as to the availability of arbitration must be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Const.,* 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *Commerce Park,* 729 F.2d at 338. When the overwhelming public policy in favor of arbitration is weighed against the speculative infringement upon Texas insurance laws which this case presents, the balance clearly favors the district court's orders compelling arbitration and staying all proceedings pending arbitration. The orders appealed from are

AFFIRMED.