**Melvin J. WICK and Shari L. Wick, Plaintiffs-Appellees,**

**v.**

**ATLANTIC MARINE, INC., a corporation, Defendant-Appellant.**

**No. 79–1873**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Oct. 24, 1979.

Rehearing Denied Nov. 26, 1979.

Neil C. Taylor, Robert E. Warren, Jacksonville, Fla., for defendant-appellant.

John B. Culp, Jr., Jacksonville, Fla., for plaintiffs-appellees.

Before BROWN, Chief Judge, and KRAVITCH and FRANK M. JOHNSON, Jr., Circuit Judges.

KRAVITCH, Circuit Judge:

Atlantic Marine, defendant below, appeals from the order of the district court denying its motion for a stay of proceedings pending arbitration. The dispute arises from the construction and purchase of a combination crab boat/shrimp trawler.

On May 29, 1978, the builder-seller, Atlantic Marine, notified the buyers (appel-

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

lees) that their boat was complete and ready for delivery. On June 2, 1978, the buyers gave the builder written notice of disputes and complaints of nonconformity between the boat and the specifications for the boat, complaints which had previously been brought to the seller's attention. The same day the seller notified the buyers that the disputes should be settled as provided for in Articles VI and VII of the contract, appointed its marine surveyor and asked the buyers to do the same at the earliest possible date so that the disputes could be settled. The buyers refused to do so and on June 16, 1978 filed a complaint which alleged and sought damages for breach of contract (Counts II & III), fraud and deceit (Count IV), negligent design and construction (Count V) and breach of warranty (Count VI). Count I is a claim for replevin; the seller delivered the boat to the buyers on stipulation and without prejudice on June 27, 1978.

Article VI of the contract provides in part:

> Should BUYER . . . find that the work is not being performed in accordance with the plans and specifications, BUYER . . . shall immediately notify AMI in writing, setting forth the nature and character of the complaint in sufficient detail so as to fully apprise AMI of same. If the parties cannot settle the dispute between themselves, then, *on written demand of either party*, each *shall* select a competent marine surveyor and notify the other of the surveyor so selected within five (5) days of such demand.[1] The surveyors shall first select a competent and disinterested umpire and failing for five (5) days to agree upon such umpire, then on request of AMI or BUYER, such umpire shall be selected by the then presiding Chief Circuit Judge of the Fourth Judicial Circuit, in and for Duval County, Florida. The marine surveyors and the umpire shall then settle the dispute and shall have the discretion to impose the costs upon the losing party or divide it between the parties on any terms which may appear just. Unless any complaint is so reduced in writing, it shall be conclusively presumed that the vessel(s) is being constructed in a manner satisfactory to BUYER, and BUYER shall be precluded thereafter from raising any objections thereto. (emphasis added)

Article VII provides in part:

> Upon completion of each vessel, the vessel shall be delivered to BUYER as set forth hereinabove. AMI shall give BUYER written notice of the completion of said vessel and BUYER shall, within five (5) days after receipt of such notice, accept delivery of said vessel. . . . In the event that there is any dispute as to the condition of the vessel at the time of delivery, such dispute shall be settled in the manner provided for in Article VI of this Contract; provided, however, BUYER shall have given AMI adequate written notice of such dispute or complaint prior to the expiration of the five (5) day period which BUYER has to accept delivery of said vessel after receiving notice of completion as set forth in this paragraph. After the expiration of said five (5) day period, BUYER shall be precluded from questioning the condition of said vessel, having by his or its action, conclusively and constructively accepted delivery of same.

The district court denied the defendant's motion for a stay pending arbitration on the ground that the arbitration clause in the contract does not contemplate all disputes arising from the contract, and mentioned specifically the buyers' allegation of fraudulent inducement as to certain contractual provisions.[2] While the district

---

1. The buyers assert this provision does not make arbitration the exclusive method of resolving disputes. That is clearly so; however, it just as clearly does make arbitration mandatory *if* one party wishes to invoke it. In this case, the seller invoked the provision thus making arbitration exclusive and mandatory.

2. The buyers assert that the order of the trial judge is not appealable. The granting or denying of a stay is, however, appealable under 28 U.S.C. § 1292(a)(1) if: (1) the action in which the order was made is an action which would have been an action at law before the fusion of law and equity; and (2) the stay was sought to

court may be correct that not all claims arising from the contract are arbitrable, it is settled in this circuit that if some claims are arbitrable and others are not and they are easily severable, that the court should stay proceedings as to those claims which are arbitrable. *Sibley v. Tandy Corp.*, 543 F.2d 540 (5th Cir. 1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *Sam Reisfeld & Sons Import Co. v. S.A. Eteco*, 530 F.2d 679 (5th Cir. 1976). Furthermore, unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Seaboard Coast Line R.R. Co. v. National Rail Passenger Corp.*, 554 F.2d 657 (5th Cir. 1977) (per curiam).

In the case at bar it cannot be said with positive assurance that the arbitration clause cannot be construed to include within its scope the plaintiff's claims of breach of contract, breach of warranty, and negligent design and construction. *See Southeastern Enameling Corp. v. General Bronze Corp.*, 434 F.2d 330 (5th Cir. 1970). The question then becomes whether those claims are so tied in with the claim of fraud and deceit, which is not fairly within the arbitration clause, that they cannot be severed for purposes of arbitration.

In *Sibley v. Tandy Corp.*, 543 F.2d 540 (5th Cir. 1976), the court distinguished claims which are legally "intertwined" and those which are merely "dependent." In that case, as in this, resolution by the arbitrator of the arbitrable portions could have rendered the non-arbitrable portion largely at an end.[3] That, however, did not mean the issues were legally intertwined, and the court ordered judicial proceedings stayed pending arbitration. 543 F.2d at 543–44. *Compare Shapiro v. Jaslow*, 320 F.Supp. 598 (S.D.N.Y.1970).

As the district court noted in its order, there is an allegation that the arbitration clause was induced by fraud. If, in fact, the arbitration clause was induced by fraud, there can be no arbitration; and if the party charging this fraud shows there is substance to his charge, there must be a judicial trial of that question before a stay can issue. *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 410–11 (2d Cir. 1959), *cert. dismissed* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

Accordingly, we reverse and remand this case to the district court to determine whether the buyers were fraudulently induced to enter into the arbitration agreement. If they were not, then the district court is directed to stay further judicial proceedings pending arbitration on the breach of contract claims, the breach of warranty claim, and the negligent construction and design claim.[4]

REVERSED AND REMANDED.

permit the prior determination of an equitable defense. *Jackson Brewing Co. v. Clarke*, 303 F.2d 844 (5th Cir. 1962). The buyers do not contest the fact that the underlying action is an action at law, but only that the request to arbitrate constitutes an equitable defense. *J.S. & H. Construction Co. v. Richmond Co. Hospital Auth.*, 473 F.2d 212, n.1 (5th Cir. 1973), disposes of that claim indicating arbitration proceedings preceding litigation are equitable in nature.

3. Resolution of the arbitrable claims will only resolve the fraud and deceit claim if the arbitrator decides the boat was built according to specifications. If it was built according to specifications, then the seller did not induce the buyers to purchase a boat the sellers were incapable of building. On the other hand, if the

arbitrators decide the boat was not built according to specifications, whether the seller was *incapable* of building the boat according to the specifications is still open to litigation.

4. The buyers also assert that this contract is not governed by the United States Arbitration Act, 9 U.S.C. §§ 1–3, because the contract does not evidence a transaction involving commerce and is not a maritime contract. Contracts to build ships are generally not maritime in nature. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56, 60–61 (1961); *Jig the Third Corp. v. Puritan Marine Ins. Underwriters Corp.*, 519 F.2d 171, 177 (5th Cir. 1975); *Hollister v. Luke Const. Co.*, 517 F.2d 920, 921 (5th Cir. 1975); *Richard Bertram & Co. v. Yacht Wanda*, 447 F.2d 966, 967 (5th Cir. 1971). It is specious to argue, however,

that a contract entered into in Alaska, between residents of Alaska and a Florida corporation, for the construction of a boat in Florida for use in Alaska does not "involve commerce."

